

**U.S. BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 12, 2014**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RICKY EUGENE MORRIS,** | § | Case No. 13-70043-HDH-7 |
| | § | |
| Debtor. | § | |
| | § | |
| **G.L. BARRON COMPANY, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 13-07003 |
| | § | |
| **RICKY EUGENE MORRIS,** | § | |
| | § | |
| Defendant. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court heard the above adversary proceeding on January 16, 2014. Plaintiff presented its trial brief on the day of trial and Defendant was given time to present a post-trial brief. In this proceeding, Plaintiff seeks to except its state court judgment against the Debtor from discharge, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

The Court adopts the stipulated facts in the parties' Agreed Findings of Fact, filed in this proceeding on January 15, 2014, and may repeat some of these findings below for background. In addition, having considered the evidence in this case, as well as arguments made by counsel, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

*Findings of Fact*

1. On February 5, 2013, the Debtor, Ricky Eugene Morris ("Morris") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.

2. G.L. Barron Company, Inc. ("G.L. Barron") is a judgment creditor of Morris.

3. On May 20, 2013, G.L. Barron timely filed its complaint to determine the dischargeability of Morris' debt to G.L. Barron.

4. G.L. Barron is a general contracting company. G.L. Barron entered into a prime contract with the Fairfield United Methodist Church (the "Church") in Fairfield, Texas, to construct improvements for the Church (the "Church Project").

5. G.L. Barron and Morris entered into a subcontract agreement whereby Morris was to supply labor, equipment, and materials necessary to perform steel erection work on the Church's gym in strict compliance with the plans and specifications. Morris's work included the installation and anchoring of the steel structure to the foundation by installing baseplates secured by anchor bolts.

6. Morris certified, in each of the three Applications for Payment submitted to G.L. Barron, under oath as follows: "I hereby certify that work covered by this Application for Payment has been completed in strict accordance with the Subcontract Agreement and that the amount of this Application is now due."

7. Morris's work called for the installation of steel base-plate connections with anchor bolts. However, upon inspection, G.L. Barron found that Morris had failed to install some the steel base-plate connections correctly.

8. During completion of the project, extra "spacer" plates had to be added to the steel base-plates in order to make the roof of the improvements (a gymnasium and classrooms) line up with the existing church building.  Thus, making it difficult to attach the nuts and bolts in several locations.

9. Several of the steel base-plate connections were not in fact made with the nuts and bolts, but instead nuts were welded or glued in place on top of the plates to make it appear that the work was complete.

10. G.L. Barron relied on Morris's representations that the work was performed pursuant to the conditions required in the Subcontract Agreement.

11. G.L. Barron has suffered both direct and consequential damages as a result of this reliance.

12. On August 11, 2011, G.L. Barron commenced an action in the 77th District Court of Freestone County, Texas, asserting claims against Morris for fraud, and sought damages for Morris's actions on the Fairfield United Methodist Church Project.  For its fraud claim, G.L. Barron pled that:

> Morris represented to Barron that its work was complete, but it was not complete. Upon review of Morris' work, Barron found that Morris had failed to install some components of the steel called for in the subcontract agreement. Morris' actions were sneaky, and done to make it appear that work was complete when the work was really not complete. Barron relied on Morris' fraudulent misrepresentations to its detriment, and Barron has suffered both direct and consequential damages as a result.

13. Morris failed to answer or otherwise appear in the state court action.

14. Evidence was presented to the state court that Morris had engaged in improper and fraudulent conduct which caused G.L. Barron actual damages totaling $69,730.91, and

the state court entered a default judgment on December 20, 2013, for G.L. Barron on the fraud claim against Morris for actual damages of $69,730.91 and exemplary damages in the amount of $10,000.00.

15. The state court judgment has not been appealed, and is now final.

16. The state court judgment remains unsatisfied in the amount of $68,142.93.

*Conclusions Of Law*

1. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409.

*11 U.S.C. 523(a)(2)(A)*

2. Bankruptcy Code Section 523(a)(2)(A) provides, in relevant part, that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

3. To prevail under this section, G.L. Barron must show that: (1) Morris made a representation to G.L. Barron; (2) with knowledge that the representation was false; (3) intending to deceive G.L. Barron; (4) G.L. Barron actually and justifiably relied on the representation; and (5) G.L. Barron was injured as a proximate result of its reliance. *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). False representations need not be overt. "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation." *In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2001). Misrepresentations may also be made through conduct. *Id*.

4. In a dischargeability proceeding, it is the plaintiff's burden to show that each of these elements has been met, which must be proven by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001).

5. In carrying this burden, intent to deceive may be inferred from "'a reckless disregard for the truth or falsity of the statement combined with the sheer magnitude of the resultant misrepresentation.'" *In re Acosta,* 406 F.3d at 372 (citing *In re Norris,* 70 F.3d 27 (5th Cir.1995)).

6. "'Intent of a kind sufficient to preclude discharge for debt for money obtained by debtor's false pretenses, false representation or actual fraud may be inferred where the debtor makes a false representation and knows or should know that the statement will induce another to act.' *In re Hurst*, 337 B.R. 125, 133 (Bankr. N.D. Tex. 2005). When examining a debtor's intent under section 523(a)(2)(A), the Court is required to consider whether the circumstances in the aggregate present a picture of deceptive conduct on the part of the debtor, which betrays an intent on the part of the debtor to deceive his creditors. *Id*. Where the debtor intends or has reason to expect a creditor to act in reliance upon the debtor's representations, there is an intent to deceive on the part of the debtor. *Id*." *In re Arnette*, 454 B.R. 663, 698 -699 (Bankr. N.D. Tex. 2011).

7. At trial, G.L. Barron presented physical evidence of nuts from steel base-plates that were not properly connected on ten different support columns. Each of these base-plates were supposed to be held in place by at least four bolts, and several of these nuts on each column were instead welded to the base-plates and connected to threaded rods to make it look like the bolts were attached.

8. Morris testified that he had only made one such improper connection at the direction of the superintendent working for G.L. Barron on the project at the time, Mr. Philip Van Vleck.

9. Mr. Van Vleck testified, through deposition testimony admitted into evidence at trial, that he did not direct Mr. Morris or his employees to deviate from the scope of work in this manner.

10. Mr. Morris had no explanation as to why the nuts were not properly affixed to the bolts on the base-plates of the other columns. Mr. Morris testified that he was the only subcontractor on the job site responsible for attaching the base-plates to the bolts, and that he took full responsibility for his work and the work of his employees.

11. Based on the evidence presented, the Court must conclude that Morris or his employees made these unconnected bolts look like they were connected to the base-plates in order to pass inspection, and that Morris intended to deceive G.L. Barron in order to get paid without performing the additional work required by making the connections after the "spacer" plates were added to the project.

12. G.L. Barron has established the elements of fraud. Morris made numerous material representations, thereby inducing G.L. Barron to honor his draw requests. Morris knew those representations were false when they were made, intended G.L. Barron to rely on those representations and G.L. Barron actually relied, and was justified in relying, upon those representations. G.L. Barron sustained a loss as a proximate result of its reliance. Accordingly, all of the elements of section 523(a)(2)(A) are satisfied.

*11 U.S.C. 523(a)(6)*

13. Section 523(a)(6) of the Bankruptcy Code, provides in relevant part, that:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity …

11 U.S.C. § 523(a)(6).

14. In order for conduct to qualify as willful and malicious, the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." *Williams v. IBEW Local 520 (In re Williams),* 337 F.3d 504, 509 (5th Cir. 2003) (quoting *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 606 (5th Cir. 1998)). Injuries that are negligently or recklessly inflicted are insufficient to meet the requirements of § 523(a)(6); they must be willful. *Kawaauhau v. Geiger,* 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *see also Raspanti v. Keaty (In re Keaty),* 397 F.3d 264, 269-270 (5th Cir. 2005).

15. Willful and malicious injuries "are not limited to physical damage or destruction; harm to personal or property rights is also covered by section 523(a)(6)." *International Beauty Products, LLC v. Beveridge (In re Beveridge),* 416 B.R. 552, 2009 Bankr. LEXIS 2225, 2009 WL 2591143 *11 (Bankr. N.D. Tex., August 18, 2009) (citing 4 COLLIER ON BANKRUPTCY P 523.12(4) (15th ed. rev. 2003)).

16. Again, the burden is on the Plaintiff to prove, by a preponderance of the evidence, that each of the elements under subsections 523(a)(6) have been met. *See Grogan v. Garner,* 498 U.S. 279, 286-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

17. While G.L. Barron did offer some evidence at trial of the possible harm that may have been caused had the faulty connections not been discovered, the building had been in use for

some time without any noticeable effects from the lack of several anchor bolts. Morris testified that he did not want to cause harm to G.L. Barron, but instead desired to work for the company in the future.

18. G.L. Barron has failed to meet its burden to prove that these actions were taken by Morris with either an objective substantial certainty of harm or a subjective motive to cause harm.

*Collateral Estoppel*

19. Collateral estoppel is applicable in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When the bankruptcy court is dealing with the effect of a state court judgment, the applicable rules of preclusion are those from the state in which the judgment was rendered. *See Fielder v. King (In re King)*, 103 F.3d 17, 19 n. 2 (5th Cir. 1997). Here, Texas rules of preclusion apply, as we are dealing with the effect of a state court judgment. *Id*.

20. Under Texas law, collateral estoppel applies when the following elements are met: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

21. As G.L. Barron stated in its brief, unlike the issue of liability, the amount of G.L. Barron's damages was not admitted by Morris's state court default but was submitted to the state trial court for determination. Under Texas law, a defaulting defendant who fails to timely answer or appear is deemed to have admitted all allegations of fact set forth in the petition, except for the amount of damages. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). In order to determine unliquidated damages, the trial court is required to hear evidence regarding damages. Tex. R. Civ. P. 243.

22. G.L. Barron submitted its proof of damages for the state trial court's determination and the state trial court made a specific finding on G.L. Barron's damages. Because the amount of damages was determined by proof and not admitted by default, this issue was litigated in the state court and collateral estoppel bars re-litigation.

23. Notwithstanding the foregoing, G.L. Barron met its burden of proof at trial before this Court to show, by a preponderance of the evidence, the dollar amount of the debt "arising from" Morris's fraud, both through the exhibits regarding damages, which were admitted into evidence, and the testimony of Caleb Palmer.

24. To the extent any conclusion of law is more properly considered to be a finding of fact, it is so construed, and vice versa.

25. G.L. Barron's counsel shall submit a judgment to the Court for signature within fourteen (14) days from the date of entry of these findings and conclusions.

###End of Findings of Fact and Conclusions of Law###